## Case No. 18,268.

### CHARGE TO GRAND JURY—NEUTRALITY LAWS.

[4 Wkly. Law Gaz. 214.]

Circuit Court, D. Louisiana. Oct. 20. 1859.

VIOLATION OF NEUTRALITY LAWS — PREPARING MILITARY EXPEDITION.

["To provide or prepare the means for" any military expedition or enterprise, within the meaning of the neutrality laws, such preparation must be made as shall aid the expedition. The contribution of money. clothing for the troops, provisions, arms, or any other contributions, which shall tend to forward the expedition or add to the comfort or maintenance of those engaged in it, is a violation of the law. These acts must all be done under such circumstances as to show the criminal intent, unless such intent shall be avowed. Following Case No. 18,265.]

McCALEB, District Judge (charging grand jury). The general terms providing or preparing means were clearly intended by congress to refer to the usual means for a military expedition. Such expedition cannot be carried

on without men and arms and other munitions of war. To transport these men and arms and other munitions of war, to render them available for the expedition against a foreign territory situated like Nicaragua, there must be provided or prepared vessels propelled by wind or steam or both. This view seems to me to be consistent with reason and common sense, and consonant with the evident design of congress. It is for this reason, gentlemen, that I shall cite to you the opinion of Mr. Justice McLean. What is the language of the judge? "To provide or prepare the means for any military expedition or enterprise within the law, such preparation must be made as shall aid the expedition. The contribution of money, clothing for the troops, provisions, arms, or any other contribution which shall tend to forward the expedition, or add to the comfort or maintenance of those who are engaged in it, is considered in violation of the law. These acts must all be done under such circumstances as to show the criminal intent, unless such intent shall be avowed. And it is hardly to be expected that, when an individual is about to violate the laws of his country, he will openly declare his intention to do so. Where the act and the attendant circumstances show the criminal intent, no subterfuges or motives avowed should screen the citizen from the consequences of such an act." [Case No. 18,265.]

We know, gentlemen of the grand jury, that peaceful relations exist between this country and Nicaragua, and that neither government has given any indications of a disposition to have those relations interrupted. What, then, the government of the United States is unwilling to do, it ill becomes small detachments of its citizens, acting independently and upon their own responsibility, to accomplish. Such a course must inevitably produce what the eminent jurist to whom we have already alluded has denominated that "monstrous anomaly in the history of the world, of a nation at peace, while its citizens are at war." And, surely, it is unnecessary for me to depict the calamities attendant upon war, even when waged in its mildest forms. An invasion by an army of an adequate force carries desolation in its path. The unoffending inhabitants of the invaded country endure, without the power of resistance, every species of outrage and suffering. The quartering of troops in their dwellings without their consent; the subsistence of those troops upon provisions which they have accumulated by honest toil; the pillage and plunder to which their farms and plantations are subjected without the hope of compensation for the losses they may sustain,—are but a few of the evils and calamities to which they must submit. And let it ever be remembered that innocent women and children are at all times the sharers in the sufferings which these military invasions never fail to produce in their desolatory progress. If, on the other hand, an invasion is attempted by an inadequate force, the sufferings and dangers of the invaders themselves must be in proportion to their inability to encounter them. Whether or not it be the duty of the government to interfere to avert the dangers to which a portion of its citizens may choose thus to expose themselves is a question which we need not decide. But surely it may be urged as an argument, to show the humanity of the law, that its faithful and rigid enforcement, whether by the government or the courts, may be instrumental in saving deluded persons from the perils into which they would blindly rush under the guidance of their leaders, and under the influence of promises which may never be fulfilled, and of hopes which may never be realized.

With these remarks, gentlemen, I now commit the whole subject to your consideration, confident that you will discharge with fidelity the important duty which now devolves upon you.